# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BELINDA STIDIMIRE, as the Administrator of the ESTATE of DAMON E. STIDIMIRE, Deceased, | )<br>)<br>) |
| Plaintiff, | ) Case No. 17-CV-1183-SMY-SCW |
| vs. | ) |
| ST. CLAIR COUNTY SHERIFF RICHARD WATSON, MAJOR PHILLIP MCLAURIN, ST. CLAIR COUNTY, OFFICER ERIC WALTER, OFFICER JON KNYFF, and OFFICER MICHAEL RIPPERDA, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Belinda Stidmire, Administrator of the Estate of Damon E. Stidmire, brings this action against the St. Clair County Sheriff Richard Watson, Major Phillip McLaurin, St. Clair County, Officer Eric Walter, Officer Jon Knyff, and Officer Michael Ripperda, alleging violations of 42 U.S.C § 1983 and state law claims for wrongful death, *respondeat superior,* and indemnification. Now before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 15). Plaintiff filed a Response (Doc. 21). For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**.

## Background

Plaintiff makes the following relevant allegations in the Complaint: Plaintiff's decedent, Damon Stidimire, had significant contact with the St. Clair County Court and juvenile justice

system as a child and teenager (Doc. 1, ¶¶ 14-15). His probation records maintained by St. Clair County detail a lengthy history of mental illness and substance abuse that placed him at an elevated risk for suicide. *Id*. On October 25, 2015, Officer Scott Toth of the St. Clair County Sheriff's Department arrested Stidimire for allegedly stabbing an individual the previous night. *Id*. at ¶ 21. He was nineteen years old at the time. *Id.* at ¶ 3.

Stidimire was transported to the St. Clair County Jail (the "Jail") for booking. *Id.* at ¶ 21. The booking process at the jail is designed such that the arresting officer is generally responsible for asking the detainee questions contained on a Field Booking Form. *Id.* at ¶¶ 22-23. The arresting officer then provides that form to the booking officer at the jail, who simply reviews the form and inputs the information into the computer system. *Id.* The result of this policy means that the arresting officer is the individual who conducts a brief mental health screen of the detainee and records the detainee's answers on the Field Booking Form. *Id.* The booking officer does not personally assess the detainee's mental health or ask any questions to clarify the detainee's answers to the mental health screening questions. *Id.* The booking officer then makes the decision whether to refer the detainee to mental health for further evaluation based solely on what the arresting officer recorded on the form. *Id.*

Officer Toth asked Stidimire the mental health questions on the Field Booking Form. *Id.* at ¶¶ 25-26. According to the form, Stidimire answered "no" to all the questions, indicating that he had no mental health issues. *Id.* The field booking form completed by Officer Toth was replete with errors – Stidimire's charge was listed as "Murder" although it was aggravated battery at the time; his height was listed as 5'2" although he was 5'5"; and he was listed as having no injuries, although he had an injured lip. *Id.* These errors call into question whether Officer Toth accurately recorded Stidimire's answers to the brief mental health screen. *Id.*

Defendant Officer Eric Walter booked Stidimire into the jail. *Id.* at ¶ 27. During his booking, Stidimire was visibly disturbed, scared, and concerned that something improper was occurring. *Id.* This fear was exacerbated when he was mistakenly prematurely placed in an orange jumpsuit before his photo was taken for a lineup. *Id.* Officers then had to put Stidimire in street clothes, take his photo, and return him to his orange jumpsuit, which caused Stidimire great anxiety. *Id.* Despite Stidimire's obvious fear and signs of distress, Walter failed to ask Stidimire any questions regarding his current mental state or mental health history. Instead, he relied on what the arresting officer had recorded on the field booking form, which was replete with errors, and did not refer Stidimire to mental health for further evaluation. *Id.* at ¶¶ 28-29. Thus, Stidimire did not receive any mental health care during his time at the Jail. *Id.* ¶ 5.

On October 27, 2015, Stidimire's charges were increased to murder, and his bond was set at $500,000, which he was unable to pay. *Id.* at ¶¶ 30-31. At the jail, he was rehoused to Cell Block C, cell #4 and placed in a four-man cell alone where the light was broken. *Id. at* ¶ 33. He was left alone in the dark. That evening, Block C was put on lockdown due to a fight. *Id*. at ¶ 34. On phone calls made during this time, Stidimire expressed to family members his fear of being housed in the chaotic and violent jail and his ability to go. *Id.* at ¶ 34. Throughout the day, he was visibly distraught and crying inconsolably. *Id.*

On October 29, 2015, the day of Stidimire's suicide, Block C was still on lockdown. Due to the lockdown, Stidimire was unable to have a scheduled visit with his fiancé. *Id.* at ¶ 36. When he inquired about the visit, an officer snapped and cussed at him for asking. *Id.* at ¶ 38. An officer also dismissed his request for a book. *Id.* Stidimire appeared distraught and became withdrawn and quiet after being dismissed by the jail staff. *Id.* at ¶ 38. Other detainees who were housed in Block C along with Stidimire reported that Stidimire appeared seriously and

visibly distraught throughout that day. Being housed alone in a dark cell further deteriorated Stidimire's mental state. *Id.* at ¶ 37.

Defendant Officers Jon Knyff and Michael Ripperada were responsible for Block C on the day of Stidimire's suicide. *Id.* at ¶ 40. Both officers failed to adequately conduct cell checks that day and ignored Stidmire's obvious signs of distress and risk factors for suicide. *Id*. at ¶ 41. Ripperda began his shift at around 5:45 p.m. that day. *Id.* at ¶ 42. According to Ripperda's report, he made his first cell check in Block C at around 5:50 p.m. *Id.* Ripperda rushed through the block and failed to appropriately observe Stidimire in his cell. *Id.* Detainees in the cells next to Stidimire report that they became concerned about the silence from Stidimire's cell so they tried to get his attention by beating on the bars. *Id.* at ¶ 43. When Stidimire did not respond they knew something was wrong. *Id.* They also knew something was wrong because they smelled what they thought was excrement. *Id.* Some detainees then started making noise to try to get the officers' attention. *Id.*

Ripperda entered Block C to perform his second cell check at around 6:30 p.m. *Id.* at ¶ 44. He entered the cell block from the back door near cell #5 and again walked right by Stidimire's cell without stopping. *Id.* At this point, Stidimire was hanging from his cell bars. *Id.* The cells in Block C are large with open bars, giving officers a clear view of the entire cell. *Id.* It is impossible for Ripperda to have missed Stidimire's hanging body unless he was not looking in the direction of Stidimire's cell at all. *Id.*

The detainees in the cell block attempted to get Ripperda's attention. *Id.* at ¶ 45. After Ripperda passed Stidimire's cell and reached cell #3, the detainees in that cell insisted that he turn around and go check on Stidimire in cell #4. *Id.* At that point, Ripperda turned around and went back to Stidimire's cell. *Id.* Upon reaching Stidimire's cell, Ripperda observed Stidimire

hanging from his cell bars by a bed sheet. *Id.* Ripperda radioed for "All Johns to C Block," and a number of officers responded. *Id.* at ¶ 46. Stidimire was declared dead about fifteen minutes after arriving at the hospital. *Id.* at 47.

The jail does not have adequate suicide prevention policies, training, and supervision on the proper way to deal with detainees with mental health problems. *Id.* at ¶¶ 60-61. As a result of the lack of adequate formal policies, training, and supervision, widespread practices were developed by employees at the jail under which detainees with mental health issues were routinely denied access to proper mental health treatment, and detainees who were at risk of suicide were routinely denied access to safe and secure suicide prevention cells. *Id.* at ¶ 61. Stidimire was the third detainee to successfully commit suicide at the jail within a 17-month period. *Id.* at ¶ 58. In addition, there were 13 suicide attempts during the same period. *Id.*

Plaintiff asserts five causes of action in the Complaint:

**Count I:** a claim under 42 U.S.C. § 1983 against McLaurin, Walter, Knyff, and Ripperda (the "individual defendants") in their individual capacities for violation of the Fourteenth Amendment due process clause;

**Count II:** a claim under 42 U.S.C. § 1983 against Watson in his official capacity for violation of the Fourteenth Amendment due process clause;

**Count III:** a claim under the Illinois Wrongful Death Act, 740 ILCS 180/1, against the individual defendants on behalf of Stidimire's next of kin;

**Count IV:** a claim under the Illinois Wrongful Death Act under a *respondeat superior* theory against Watson in his official capacity; and

**Count V:** a claim against St. Clair County for indemnification for the liability of the St. Clair County Sheriff's Department employees.

The defendants move this Court to dismiss all Counts for failure to state a claim.

## Discussion

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations in the Complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The federal system of notice pleading requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the allegations must be "more than labels and conclusions." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008). This requirement is satisfied if the Complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

### § 1983 Due Process Violation (Count I)

Plaintiff claims the individual defendants were deliberately indifferent to the serious risk that Stidimire would commit suicide when they among other things, failed to obtain mental health services for him and regularly check on him in his cell. Because Stidimire was a pretrial detainee and not an inmate, Plaintiff's conditions of confinement claim arise under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Miranda v. County of Lake*, 900 F.3d 335, 350-351 (7th Cir. 2018). That distinction had long been of little consequence, as the Seventh Circuit "typically assessed pretrial detainees' [due process] claims under the Eighth Amendment's standards,

reasoning that pretrial detainees are entitled to at least that much protection." *Miranda,* 900 F.3d at 350.

In *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), the Supreme Court concluded that the due process standard for excessive force claims by pretrial detainees is less demanding than the Eighth Amendment standard for excessive force claims by convicted inmates. *See id.* at 2475. The Seventh Circuit recently held in *Miranda* that *Kingsley*'s logic reaches the broader genus of conditions of confinement claims. *Miranda*, 900 F.3d at 352 ("[T]he Supreme Court has been signaling that courts must pay careful attention to the different status of pretrial detainees ... We see nothing in the logic the Supreme Court used in *Kingsley* that would support this kind of dissection of the different types of claims that arise under the Fourteenth Amendment's Due Process Clause.").

Under *Kingsley* and *Miranda* then, a pretrial detainee need only establish that the defendant's conduct was objectively unreasonable – not that the defendant was subjectively aware that it was unreasonable. *Miranda*, 900 F.3d at 352-53. In other words, a plaintiff must show that a defendant acted intentionally or recklessly as he "knew, or should have known, that the condition posed an excessive risk to health or safety" and "failed to act with reasonable care to mitigate the risk." *Id.* This is a more exacting standard than that required to prove negligence, or even gross negligence and is "akin to reckless disregard." *Id.*

Applying the *Miranda* standard, the Court finds that Plaintiff's allegations plausibly suggest that Defendants Walter, Knyff, and Ripperda acted purposefully, knowingly or recklessly regarding Stidimire's risk of suicide, and that their conduct was objectively unreasonable. During booking, 19-year old Stidimire was visibly disturbed, scared, and concerned that something improper was occurring. Despite Stidimire's obvious fear and signs of

distress, Walter did not ask him any questions regarding his current mental state, his mental health history, nor did he refer him to mental health for further evaluation. On the day he committed suicide, Stidimire appeared seriously and visibly distraught throughout the day. Thus, it is plausible that Knyff and Ripperada, who were responsible for conducting cell checks in Stidimire's block that day, were aware that Stidimire was exhibiting signs of distress, was at a high risk for suicide, and did nothing. Accordingly, Defendants' Motion is denied as to the claims asserted in Count I against Defendants Walter, Knyff, and Ripperda.

However, Plaintiff has not pled sufficient facts to establish that Defendant McLaurin was aware of the risk that Stidimire might commit suicide. Plaintiff alleges that McLaurin was responsible for supervising and managing all aspects of jail operations. Plaintiff further alleges that McLaurin was aware that within a two year period, two detainees had successfully committed suicide and 14 others had attempted suicide. But these facts alone do not plausibly suggest that McLaurin acted purposefully, knowingly, or even recklessly regarding the risk that Stidimire might commit suicide, and was deliberately indifferent to his need for protection. There are no allegations indicating that McLaurin had any interactions with Stidimire during his detention at the Jail. For these reasons, Defendants' motion will be granted as to Plaintiff's claims in Count I against McLaurin.

### § 1983 *Monell* Violation (Count II)

Plaintiff asserts that Watson, in his official capacity as the St. Clair County Sheriff, was deliberately indifferent to the serious risk that Stidimire would commit suicide, because the jail had no suicide prevention policy, provided inadequate training and supervision for employees regarding detainee suicide prevention, and had a practice of routinely denying detainees with mental health problems access to mental health professionals and suicide-proof cells. Plaintiff

also alleges that Watson was aware of the risk of suicide in the jail as there had been two suicides and fourteen suicide attempts in the jail during the seventeen months preceding Stidimire's death.

A *Monell* claim subjects a local governing body, such as the County, to monetary damages under 42 U.S.C. § 1983 "if the unconstitutional act complained of is caused by (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Here, Plaintiff alleges that the policies and widespread informal practices of the St. Clair County Sheriff's Department were the moving force behind the failure to protect Stidimire from the known risk of suicide in the jail. Heightened pleading standards do not apply to *Monell* claims. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). Therefore, drawing all inferences in Plaintiff's favor as the Court must do at this stage, the Court finds these allegations sufficient to put the County on notice of the claims against it. Defendants' motion to dismiss Count II is denied.

### Wrongful Death Act (Count III)

Defendants contend that Stidimire's suicide was an independent intervening act that was unforeseeable to the individual defendants and that broke the chain of causation between Defendants' conduct and Stidimire's death. An essential element of a claim under the Illinois Wrongful Death Act is that the defendant's breach of a duty owed to protect the decedent from a foreseeable harm was the proximate cause of the decedent's death. *Bovan v. American Family Life Ins. Co.*, 897 N.E.2d 288, 292 (Ill. App. Ct. 2008).

In cases alleging negligence, generally, a decedent's "voluntary act of suicide is an independent intervening act which is unforeseeable as a matter of law, and which breaks the chain of causation from the tortfeasor's negligent conduct." *Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1123 (Ill. 2015) (citing *Little v. Chicago Hoist & Body Co.,* 203 N.E.2d 902 (Ill. 1965)). This rule holds unless the defendant had a duty to the decedent to prevent the suicide. *Id.* at 1124 (citing *Winger v. Franciscan Med. Ctr.*, 701 N.E.2d 813, 820 (Ill. App. Ct. 1998) (rule inapplicable where mental health care professionals had professional duty to supervise decedent in their care with known suicidal tendencies)). Where the duty of care breached is the duty to protect against what would otherwise be an unforeseeable consequence, that consequence becomes foreseeable to the defendant, and the breach of the duty to protect against it can result in negligence liability. *See Jutzi-Johnson v. United States*, 263 F.3d 753, 756 (7th Cir. 2001).

The defendants in this case owed a general duty of care to Stidimire, who was in their custody, including the duty to protect him from harm he encountered by virtue of his detention. *See Dezort v. Village of Hinsdale*, 342 N.E.2d 468, 472-73 (Ill. App. Ct. 1976). Plaintiff has sufficiently alleged facts suggesting that Stidimire's suicide was a foreseeable consequence of the individual defendants' actions and/or inactions. According to the Complaint, despite signs of distress exhibited by Stidimire, Defendants Walter, Knyff, and Ripperda failed to take any steps to monitor and protect him. The individual defendants failed to provide him with adequate mental health services and failed to adequately conduct cell checks while he was locked down alone in a dark cell. These failures allegedly resulted in Stidimire committing suicide. Accordingly, Defendants' motion to dismiss Count III is denied.

### *Respondeat Superior* (Count IV)

The Defendants move to dismiss Count IV on the basis that there is no *respondeat superior* liability for claims brought under 42 U.S.C. § 1983. They are correct, but Plaintiff does not seek to hold Watson liable in his official capacity under 42 U.S.C. § 1983, but rather under the Illinois Wrongful Death Act. Claims seeking to hold a principal liable under the Wrongful Death Act for its agent's acts under a *respondeat superior* theory are permitted, and are in fact common. *See, e.g., McHale v. W.D. Trucking, Inc.*, 39 N.E.3d 595 (Ill. App. Ct.), *app. denied*, 42 N.E.3d 371 (Ill. 2015); *Davis v. City of Chi.*, 8 N.E.3d 120 (Ill. App. Ct.), *app. denied,* 20 N.E.3d 1252 (Ill. 2014).

Here, at the time of their alleged wrongful conduct, Defendants Walter, Knyff, and Ripperda were acting as agents of the St. Clair County Sheriff's Department, which can therefore be liable for their negligent acts. Defendants' motion to dismiss is denied as to Count IV.

### Indemnification (Count V)

Plaintiff asserts an indemnification claim under the Illinois Tort Immunity Act, 745 ILCS 10/9-102, which directs municipalities to pay compensatory damage judgments for torts committed by their employees while acting within the scope of their employment. The County moves to dismiss the indemnification claim on the basis that the other claims are subject to dismissal. Because Plaintiff's other claims survive dismissal, the indemnification claim will not be dismissed on this basis.

### Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 15); the Motion is **GRANTED** as to Plaintiff's

due process claims (Count I) against Defendant Phillip McLaurin. Accordingly, Defendant McLaurin is **DISMISSED without prejudice**. The Motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**

**DATED: September 27, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**